I'm going to call our next case, Spady v. Bethlehem Area School District. I'm going to call our next case, Spady v. Bethlehem Area School District. Good morning. May it please the court. My name is Audrey Copeland on behalf of the appellant, Carlton Rogers in this case. And I'd like to reserve three minutes for rebuttal if I may. That's granted. Thank you. Your Honor, the relief that we request in this case is that this court vacate the order of the district court which denied summary judgment on Mr. Rogers' claim of qualified immunity. Mr. Rogers was a physical education teacher in this case and he was sued along with the school district and other individuals. The other ones were dismissed. Let me ask you a question here. Judge Slomski said that even though the second prong of the inquiry is a question of law, that is, was there a clearly established right here, the court's unable to do it without knowing whether a constitutional violation occurred using the Supreme Court authority in Curley. But the Supreme Court in Pearson said that the district court can look at whether a right was clearly established without deciding whether there was a constitutional violation. So should not the court have looked and asked that question? Was there a right clearly established? And how do you pass that test with respect to what happened here? Well, Your Honor, we feel that the district court erred by not looking at that second prong. Okay. And how is the right – first of all, what is the right here? And then how was it clearly established? Well, Your Honor, again, I think this court has also said that the court need not first address that first prong, which is whether or not there was a constitutional violation. They can go to the second prong. No, but I'm asking – you're asserting a constitutional right, whether or not there's a violation or not. And we have to decide whether it was clearly established. So what is the right that you're contending was clearly established? Well, I believe when you look at the plaintiff's case and the plaintiff's complaint that the right, I suppose, is identified by the plaintiff is whether or not the gym teacher, Mr. Rogers, was on notice that his alleged conduct at the time, which would be in 2010, which is alleged to be a failure to properly supervise the student's activities in the pool, would be a constitutional violation, or his failure to identify and to respond to the specific harm that the plaintiff alleges. And that harm alleged by the plaintiff is the danger of aspirating pool water into the lungs and suffering what the plaintiff claims the cause of death was, delayed or secondary drowning. And we submit that the state of the law at the time of this conduct was not such that it would put a reasonable person and the gym teachers on notice that a constitutional right was being violated. I know that Your Honors have not addressed that many school athletic cases, the most prominent being a non-presidential decision in Hinterberger. And in that case, this court reversed the denial of summary judgment and qualified immunity on that second clearly established grounds. That was a case involving a cheerleader, and the state created a danger case probably against the coach, apparently for not putting proper matting down before teaching the cheerleading squad a new stunt, which ended up in one of the cheerleaders being injured. And this court actually decided that on several grounds. And I think that those are very much relevant here. Although non-presidential opinions are non-presidential opinions. That's correct, Your Honor. But I think it's persuasive. Are you familiar with the Supreme Court's decision yesterday in Taylor v. Parks? I'm afraid I'm not. Was it a school case? It's not a school case, but it's a qualified immunity case. Is it? Involving the question of whether a right was clearly established or not. Judge Hardiman had dissented in our court in the Supreme Court. We had a bad day at the Supreme Court yesterday. We were reversed in two cases. Except you had a good day. I was 50-50. Well, I was on the other panel, too. I was 50-50. Well, it was a question of a clearly established law, and the Supreme Court said we were viewing that a little bit too liberally, whereas in presidential opinions we said we might have been looking at it too narrowly. But it said there has to be something there for something to be clearly established. Well, I know that I planned today to cite what I thought was a very recent Supreme Court case from May 18th, but apparently it's not quite as recent as I thought because there have been a few more weeks since your meeting. And that was a Fourth Amendment clearly established case. And that case, it was the city and county of San Francisco case. In response to Judge Rendell's question, I'm not sure I understood your answer, unless your answer was, frankly, I'm not quite sure what the right is they are asserting. Is that your position? I guess we'll have to ask your colleague about that. Well, I think I tried to be as specific as possible as to what the right is. I mean, you quoted several things from the complaint. Well, in other words, it could be any of these things, but regardless of which one of these it is, none of them was clearly established. Well, I believe that they're both assertions by the plaintiff. I mean, I think it's essentially trying to supervise the Jim Class case, the Jim Class being conducted in the pool in this case. But it has to be a right of the individual to something, a right to bodily integrity or a right to not be sent back into the pool if you say you can't swim or a right. But it kind of is difficult to decide whether that it's clearly established or we can't figure out what it is. Well, again, the right, as you say, not to be sent back before you say you're ill and that ultimately results allegedly in a secondary, the rare phenomenon of a secondary drowning incident. So I think that's the way to look at this case. Would you urge that we would decide the clearly established prong ourselves as compared to sending it back and telling Judge Slomski that he can look at that first? Well, the district court did say that it was an issue of law, and that's obviously why we're here in front of this court, because the issue turns on an issue of law, so therefore this court has jurisdiction. And, yes, you can because it is an issue of law. But there are facts in dispute, though, right? This record is questionable. Apparently he was a non-swimmer. Do you concede that or do you not concede that? That was noted to the gym teacher. He was a non-swimmer. We're not sure how often he's in the shallow end or the deep end. There's allegations that he was working his way around the pool along the sides. I think this actually has ended up being fairly well clarified, and I think it's relatively undisputed. First of all, I would say that any of the disputed facts that the district court identified as being disputed, they go to the first problem, whether there was a constitutional violation. And the district court said that himself. We're also saying, even taking these facts, even admitting it for the purposes of summary judgment argument, even saying that he was ordered back when he was ill, even saying that he aspirated the chlorinated pool water, even saying that he perished or died of this rare phenomenon of secondary drowning, that we're still entitled to qualifying immunity based upon this clearly established prong of the test. And again, the district court identified the factual issues, but only as to that first prong. We also argued that first prong in our brief, because as a secondary argument we believe that there was a constitutional violation. But you don't have to reach that to decide qualifying immunity in this case and to grant it in favor of the PE teacher. And going back to Hintzberger, even though we of course all understand it's not presidential, it did give a very interesting analysis of the case law at that time. Hintzberger was the 2013 case by panel, not presidential, and it involved a 2004 accident with a cheerleader. And what the court did was it looked at the case law in effect at the time and there was nothing in effect that delivered that particular finding. The state created danger under those circumstances. But it also looked at the case law that had happened subsequent to the accident up until 2013. And it also found that, again, there was no consensus. The case law was modeled. And the fact that there was no consensus also showed that it wouldn't be reasonable for someone in that person's position. Would you agree that the test here is, would it be clear to a reasonable teacher that ordering an ill non-swimmer into the pool posed an unreasonable risk of harm? Well, to the extent that it should be clarified that this is not a drowning case. This is not a near-drowning case. There's not a pool accident case or anything like that.  I think we have to assume in this case, at least at this point, while it may be disputed, that this is a case of dry drowning. Well, and that's a different point. I think, yes, there's a summary judgment, secondary drowning. But it's not a case where someone's struggling in the pool, has swallowed water, is gasping. One of the things that we point out. That goes into my question about what kind of teacher should we be looking at in terms of making this judgment about a reasonable teacher. Is it a reasonable teacher who is acquainted with providing somebody with proper instruction on how to swim, or is it just any teacher? Well, I would point out that this teacher did take a very Red Cross life-saving course. But had no training on how to teach somebody how to swim. Right. But, again, Your Honor, the swimming aspect really had nothing to do with this because the Plants case is based upon an alleged incident where the young man apparently, one witness witnessed the young man go underwater for what she described as one second. Once you'd be bumped into a bunch of kids. This was in the shallow end of the pool where the individual could stand. And all the witnesses, and I think it's undisputed, that the GPG never required them to go over their heads if they couldn't swim. They knew he couldn't swim. There were other non-swimmers in the class. Would the result be different if he had drowned in the pool, under your view? I just think it would be entirely, it would just be a different analysis. Obviously, but I'm asking the question to try to help us decide this case. Wouldn't the gym teacher have an obligation to jump in the pool if there's a student in distress who's drowning in the pool during gym class? I would say it would all depend on the circumstances. If you can see someone drowning, I guess. It's a question of deliberate indifference and what rises to that level. Right. And then I think you're going into, you're not really going into the clearly established. No, you're going to the first prong. What was his conduct under the circumstances? What was his training? And that. So, but in this case, again, it's such a repeated one. Well, that's an issue here, too, whether there was deliberate indifference under the first prong. Correct? Whether there's deliberate indifference is at issue here under the first prong. Well, I suppose in a more general sense. The question is whether the standard law at the time on state-created danger cases, which would, I guess, ultimately look at some of those issues, was such that he would be unnoticed, and it was not. All right. Thank you. You reserve rebuttal time? I did reserve three minutes. Thank you. Good morning, Your Honors. Steven Nitsche on behalf of Appellee Micah Spady. Due process clause of the 14th Amendment, right to bodily integrity, is the answer to your question that you asked earlier, Your Honor. Right to bodily integrity. How did someone invade the bodily integrity of the student? He was a student in Mr. Rogers' class. He was a swimming student. He had a right to go into that pool and learn how to swim without drowning, Your Honor. He didn't drown. Yes, he was a victim of secondary drowning. Can I take just a moment and explain what secondary drowning is? I think we know what it is. You explained it well and brief. Could I take just a moment? Okay. Well, you can do whatever you want, but I think we're going to have questions for you that might help you prevail on that one, at least for me. I'm on your side on that one. Okay. But where I question you is you said Curley v. Clem for the jurisdictional analysis here, the 2007 case from our court. But Saussure v. Katz was overruled by Pearson v. Callahan, so do you not concede that it's appropriate if the district court so chooses or if this court so chooses to evaluate the second part of the test and skip over the first part? Very good. Your Honor, my understanding is Curley, I believe, gives the option if the first prong is muddled, as it is in this particular case, these facts are disputed, that there's no need to go to the second prong. And if I may quote from Curley. Well, you would say there's no need, but from the standpoint of the state actor who was being forced to go to trial, the whole point of qualified immunity is to say we're sparing you a trial unless certain factors can be shown. And so isn't it really for a court, if they're considering whether qualified immunity applies, you really have to look at whatever might provide the out, if you will. And if the law is not clearly established, is the district court to turn a blind eye to that and make the state actor go to trial even though the law is not clearly established? But when the facts are closely interwined, Your Honor. The facts are not closely interwined with the clearly established prong. Tell me what case would tell this teacher or any reasonable person would put them on notice that, oh, there's a problem here, I've got to do something. So tell me what law, what case. There's no case on secondary drowning or dry drowning. There's no case on all fours on that. Okay, but what's your best case? Well, Your Honor, reasonable. I mean, we've got to say it's clearly established. I thought you were relying on Knight v. Tedder. That seemed to be your lead case. Yes, Your Honor. And that's the case where the woman is intoxicated with her husband. And they sent the woman home unattended where she fell asleep. They put her in a much worse position and they found her. An affirmative act. And a reasonable police officer would know that what he was doing was unlawful. But by placing her in a position that had done nothing at all, she would have been in a much better place had she not been. And how would a reasonable phys ed teacher know that a student that spent a second or two or five underwater and then got out of the water, appeared fine, was at risk of dry drowning? Your Honor, he didn't appear fine. He had pain in his chest. He refused the opportunity to go to the nurse. That's disputed, Your Honor. That's Mr. Rogers' side of the story. It's in the brief, Your Honor. We have three students that said he wanted to sit out and that Mr. Rogers told him, you either get back into the pool or we're going to dock your grade. That was before he went underwater for the second testified by the student. Say that again, Your Honor. As I understand the sequence, he was told to do that. He went back in and then at some point he went underwater thereafter. Then he got out of the pool, then he went to class, and then the poor young man died in class, correct? My understanding of the facts, Your Honor, is that he did his gutter grabbing around the perimeter of the pool. We all understand what gutter grabbing is. I don't have to explain that. And while he was gutter grabbing, he released himself from the edge of the pool, went under momentarily, pardon me, ran into a group of students, went under momentarily, came up in a panic with at least one student stating that she saw him aspirate water or felt that he aspirated water, immediately went to the side of the pool, got out of the pool, informed the PE teacher that he wanted to sit on the side of the pool, didn't want to swim anymore. Mr. Rogers told him he could sit there. He sat there for, I believe, somewhere between 5 and 15 minutes where Mr. Rogers re-approached him and told him he needed to get, instead of sending him to the nurse, told him he needed to get back into the pool at that point and continue swimming. So while he was in the pool dying, as you may, he had to go back into the pool at that point. All right, but let's get back to the clearly established. And if you haven't read Taylor v. Barks, it really, I think, creates a problem for you. Because there the Supreme Court says the Third Circuit concluded that the right at issue was best defined as an incarcerated person's right to the proper implementation of adequate suicide prevention protocols. You can figure out what happened here. This purported right, however, was not clearly established in November 2004 in a way that placed beyond debate the unconstitutionality of the institution's procedures as implemented by the medical contractor. No decision of this court establishes a right to the proper implementation of adequate suicide prevention procedures. No decision of this court even discusses suicide screening or prevention protocols. And then it goes on to say, well, and if there had been, if the Third Circuit had clearly established, which we had thought we had, assuming for the sake of argument that a right can be clearly established by circuit precedent, I mean, the Supreme Court is really making this very restricted in terms of what has to dictate the result here. That's an excellent question, Your Honor. Let's talk about the procedures that Bethlehem School District did not have in place at the time. No, I'm not talking about the case law. No, I'm not talking about case law either. I'm talking about what procedures that the Bethlehem Area School District did not have in place at the time. The focus isn't on Bethlehem School District. It's on Mr. Rogers. Right. Okay. Well, Mr. Rogers. You've got a claim against Bethlehem School District. Right. Well, Mr. Rogers, not only was he not familiar with the symptoms and what to do in the event of secondary drowning, he didn't even know what secondary drowning was. His student lifeguard was permitted to lie on her stomach on the bleachers while the students were mixed, swimmers and non-swimmers, in the pool. Mr. Rogers taught from the deck in street clothes, unprepared to go into the pool to make a rescue if he needed to do it. But that's not what happened here. That's not what happened here. And the problem, as I see it, Judge Rendell is quite right about reading what the Supreme Court said. They're being very critical of the circuit courts and the district courts in this way. The lower courts, according to the Supreme Court, have been defining the constitutional right at a high level of generality. That's a phrase that you may have seen in the case law. And, you know, you stood up here and you said, write the bodily integrity. And that sounds good. It makes sense. We all see the justice in that. But when you read all the case law, that sounds like precisely the kind of high level of generality that the lower courts are consistently getting reversed. But isn't the real question, Your Honor, of that of would a reasonable gym teacher in Mr. Rogers' position know that what he's doing is unlawful? Sending a child who is telling him, I'm feeling ill and I don't want to go back into the pool. A child who just ran into somebody and went underwater, aspirated water, didn't have any body system in place. Nobody to, nobody, and he sends him back into the pool under threat of lowering his grade. You're talking about the first part. Yes, I understand that, Your Honor. And I'm challenging, I think the panel's challenging you. You're probably in good shape on the first part, at least at this stage of the litigation. But you're running into perhaps a brick wall in the second part. What is the clearly established right? You need to, before you can answer the question of whether Mr. Rogers is acting unlawfully, you need to establish what the law requires. What is the constitutional right? Is it the right not to suffer a dry drowning? Is it the right not to be sent into a pool when you are not a good swimmer? What is the right? It is the right, Your Honor, not to be sent into the pool when, it's the right not to be sent into a pool mixed in with swimmers and non-swimmers. The Supreme Court would then say, this purported right, however, was not clearly established. And be specific as to this right of not being sent, having to be sent into the pool was not clearly established because that's what it's requiring. We identify exactly what it is and say, oops, it's not there. But then aren't we opening the door for any case where there's not a case specific? We are, and the Supreme Court is closing the door. What it seems to me is you have all kinds of causes of action perhaps, negligence, battery, assault, all kinds of causes, but you just don't have a constitutional tort. That might be the answer. Or you have a constitutional tort against the school district. Right. May I reserve my time, Your Honor, for rebuttal? There is no rebuttal for you. Only your opponent will get rebuttal. Does the Court have any other questions for me? I think we don't. I think we're good. Thank you very much. Okay, thank you, Your Honor. Ms. Copeland, you reserve three minutes. Thank you. Your Honor, I just wanted to address the timeline just very briefly. And I know that the plaintiff's key witness with regard to whether any incident occurred was Ms. Williams. And her testimony can be found at the appendix starting at Rule 175A. There's a sworn statement and a deposition. And according to her testimony, any incident occurred after a swimming lapse, which would have been after any of the gutter grabbing, when he actually was in the shallow end of the pool, trying to swim in his fashion across the pool, bumped into other students, and at least according to her, might have gone under for a second. So it had nothing to do with him being ordered back into the pool after the incident occurred. That would have occurred before the incident. And also with regard to the training of Mr. Rogers, the American Red Cross life-saving course, a secondary drowning wasn't part of the curriculum then. I don't know if it is now, but it wasn't then. So it wasn't just plain ignorance. He took the course and it simply is a rare phenomenon, as the resources that the plaintiff also cited indicate. And again, I think as we know, there was no rescue needed. There was a lifeguard present. He was present. However he was demonstrating swimming is irrelevant, because again, there was no rescue needed. And he simply allowed the non-swimmers to be in the shallow end of the pool and tried to demonstrate the arm motions so they might learn how to do those. Unless the court has any more questions. No, I think not. Thank you. Thank you very much. The case is well argued but taken under advisement.